# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 28, 2011

No. 11-30047

Lyle W. Cayce
Clerk

GHAZANFAR HUSSEIN QURESHI; KAUSER BIBI QURESHI;
NAILA GHANZAFAR QURESHI; NAUREEN GHANZAFAR QURESHI;
FAIZA GHANZAFAR QURESHI; MUSTANSAR GHANZAFAR QURESHI;
BUSHRA GHANZAFAR QURESHI; AHTZAAZ GHANZAFAR QURESHI,

Plaintiffs-Appellants,

versus

ERIC H. HOLDER, JR., U.S. Attorney General;
U.S. DEPARTMENT OF HOMELAND SECURITY,
Janet Napolitano, Secretary;
U.S. CITIZENSHIP AND IMMIGRATION SERVICES,
Alejandro Mayorkas, Director;
MARIE HUMMERT, Director, USCIS Houston Asylum Center,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before SMITH, BARKSDALE, and BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The Qureshis were originally granted asylum from Pakistan because of
Mr. Qureshi's support for the Jammu Kashmir Liberation Front. Later, the U.S.

No. 11-30047

Citizenship and Immigration Services ("USCIS") decided to terminate the Qureshis' asylum based on that same support, applying the "persecutor bar" to Mr. Qureshi. When removal proceedings ensued, the Qureshis sued USCIS to challenge its application of the bar. The district court granted USCIS's motion to dismiss for lack of subject matter jurisdiction on the ground that the termination was not a final agency action. Because we agree that termination of asylum does not consummate agency action and thus is not final, we affirm.

I.

The undisputed facts are that Ghazanfar Qureshi is a citizen of Pakistan who entered the United States and applied for asylum in 1999, claiming that he suffered persecution from his membership in the Jammu Kashmir Liberation Front ("JKLF"). The application was granted in 2000, followed by derivative asylum for his wife and children.

In January 2009, Qureshi received from USCIS a notice of intent to terminate asylum status that stated that he may not have been eligible for asylum, because his contributions to JKLF and participation in its activities "potentially" constituted persecution of others on account of a protected characteristic under 8 U.S.C. § 1158(b)(2)(A)(i). At his termination hearing, Qureshi stated that he became the Secretary General of JKLF for the Mirpur District in 1991, donated money to the group, and arranged public protests. He asserted that he was not aware of any violent activities of JKLF and did not communicate with its members outside his district.

In March, USCIS issued to Mr. Qureshi a notice of termination of asylum status[1] because a preponderance of the evidence indicated that he had "participated in the persecution of another person on account of that person's national-

---

[1] USCIS later issued a slightly revised version.

No. 11-30047

ity and political opinion" as an "active and prominent member" of JKLF. Qureshi and his family were placed in removal proceedings, and their employment authorization was terminated.

In June 2010, the Qureshis sued the defendants (collectively, "USCIS"), claiming that termination of their asylum status, without a showing by specific evidence that Mr. Qureshi was a persecutor, violated the Constitution, multiple statutes, and federal regulations. The district court granted USCIS's motion to dismiss for lack of subject matter jurisdiction, reasoning that the termination was not a final agency action, because the Qureshis could renew their asylum claim in removal proceedings and because the termination decision was subject to administrative and judicial review. The Qureshis appeal.

## II.

### A.

This court reviews *de novo* a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A grant of asylum does not convey a right to remain permanently in the United States. 8 U.S.C. § 1158(c)(2). An asylum officer may terminate asylum if the alien was not eligible for asylum when it was granted. *Id.*; *see also* 8 C.F.R. § 208.24(a)(1), (2). Under the "persecutor bar," an alien who "ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion" is not eligible for asylum. 8 U.S.C. § 1158(b)(2)(A)(i).

USCIS is authorized to terminate asylum previously granted under its own jurisdiction in two ways. It may terminate asylum itself through a multi-step process, consisting of a notice of intent to terminate, a termination hearing (where the alien may present evidence in support of asylum), and, if applicable,

written notice of termination of asylum status and any accompanying employment authorization. 8 C.F.R. § 208.24(c). Alternatively, USCIS may give an immigration judge ("IJ") jurisdiction to terminate asylum by serving the alien with a notice of intent to terminate with or after a notice to appear—the document that initiates removal proceedings. § 208.24(f).

In either event, USCIS must initiate removal proceedings before an IJ after every asylum termination, unless removal proceedings have already commenced. § 208.24(e). The ex-asylee is entitled to contest the charges of removability before the IJ. 8 U.S.C. § 1229a(b)(4). Should the IJ find him removable, the alien may appeal to the Board of Immigration Appeals ("BIA") and again contest his removability. 8 C.F.R. § 1003.1(b)(3), (9).

Neither the IJ nor the BIA has authority to review USCIS's decision to terminate asylum. *Bhargava v. Att'y Gen. of the U.S.*, 611 F.3d 168, 170-71 (3d Cir. 2010). But if the BIA upholds the final order of removal, the ex-asylee may then appeal to the appropriate circuit court to review "constitutional claims or questions of law" underlying the final order of removal, including direct legal challenges to USCIS's original termination decision.[2]

While directly contesting his removability, an ex-asylee may also re-apply for asylum during his removal proceeding.[3] Aliens in removal proceedings who make a new asylum application are entitled to a full evidentiary hearing on the application. 8 U.S.C. § 1229a(b)(4). They also shoulder the applicant's eviden-

---

[2] *See* 8 U.S.C. § 1252(a)(2)(D); *Alvarado de Rodriguez v. Holder*, 585 F.3d 227, 233-34 (5th Cir. 2009); *Rodriguez-Castro v. Gonzales*, 427 F.3d 316, 319 (5th Cir. 2005).

[3] *See* 8 U.S.C. § 1158(a)(1) ("Any alien who is physically present in the United States . . . irrespective of such alien's status, may apply for asylum in accordance with this section . . . ."); *see also Silwany-Rodriguez v. INS*, 975 F.2d 1157, 1161 (5th Cir. 1992) (citing *Matter of B-*, 20 I.&N. Dec. 427 (BIA 1991) (holding that an asylum application in a removal proceeding is considered a new application)); *Singh v. Chertoff*, No. C 05-1454 MHP, 2005 U.S. Dist. LEXIS 47500, at *18-19 (N.D. Cal. Aug. 24, 2005) ("[A]ny alien whose asylum status is terminated has the opportunity to reapply for asylum . . . .").

No. 11-30047

tiary burden anew, however, *see* § 1158(b)(1)(B), whereas in termination proceedings USCIS has the burden of proof, 8 C.F.R. § 208.24(c), (f).

B.

Under the Administrative Procedure Act ("APA"), "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review."[4] "If there is no final agency action, a federal court lacks subject matter jurisdiction."[5]

In general, for agency action to be deemed final, it "must mark the consummation of the agency's decision-making process" and "must be [action] by which rights or obligations have been determined or from which legal consequences will flow."[6] In evaluating whether a challenged agency action meets these two conditions, this court is guided by the Supreme Court's interpretation of the APA's finality requirement as "flexible" and "pragmatic." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-50 (1967).[7]

Under a flexible, pragmatic reading, termination of asylum cannot be viewed as a "consummation" of agency decisionmaking. Instead, it represents only an intermediate step in a multi-stage administrative process, succeeded (or

---

[4] 5 U.S.C. § 704. The same section also recognizes "[a]gency action made reviewable by statute," but no such statute applies here.

[5] *Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004) (citation and internal quotation marks omitted).

[6] *Id.* at 337 (citations omitted).

[7] In addition to the two-pronged test used here, this court has also restated the Supreme Court's "pragmatic" interpretation of the APA's finality requirement as a multi-factor test, including: "(1) the legal and practical effect of the agency action; (2) the definitiveness of the ruling; (3) the availability of an administrative solution; (4) the likelihood of unnecessary review; and (5) the need for effective enforcement of the Act." *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 291 (5th Cir. 1999) (citing *Fed. Trade Comm'n v. Standard Oil Co. of Calif.*, 449 U.S. 232, 242-43 (1980)).

No. 11-30047

accompanied) by removal proceedings before an IJ and intra-agency appeal to the BIA.

Termination of asylum automatically triggers another stage of decision-making, the removal proceeding. Pending removal proceedings make termination an intermediate, nonfinal action, because "when removal proceedings are pending, further administrative relief is available." *Cabaccang v. USCIS*, 627 F.3d 1313, 1317 (9th Cir. 2010) (citation omitted). Even if the IJ and BIA lack jurisdiction to review asylum termination decisions, they both retain the power to halt removal proceedings altogether, either by an alien's successful contest to removability via 8 U.S.C. § 1229a(b)(4) or by a successful new asylum application via 8 U.S.C. § 1158(a)(1).

The Qureshis can point to only two published district court opinions to support their contention that USCIS's termination of their asylum constitutes final agency action. In one case,[8] the court, based on its reading of 8 C.F.R. § 208.24(e), found termination of asylum distinct enough from removal to conclude that termination was not merely an intermediate step in a larger process. That regulation states: "When an alien's asylum status or withholding of removal or deportation is terminated under this section, the Service shall initiate removal proceedings, *as appropriate*, if the alien is not already in exclusion, deportation, or removal proceedings." *Id.* (emphasis added). The court read "as appropriate" to "suggest[] that there may be circumstances where an action to remove an alien does not follow necessarily from the termination of the alien's asylum status."[9] But in context, the language of § 208.24(e) indicates that removal proceedings must follow all terminations of asylum. "As appropriate"

---

[8] *Singh v. Bardini*, No. C-09-3382 EMC, 2010 U.S. Dist. LEXIS 3824 (N.D. Cal. Jan. 19, 2010) (magistrate judge), *followed by* 2010 U.S. Dist. LEXIS 55706 (N.D. Cal. Jun. 7, 2010) (magistrate judge).

[9] *Singh v. Bardini*, 2010 U.S. Dist. LEXIS 3824, at *15.

merely refers to a circumstance in which removal proceedings were already pending at the time an IJ terminates asylum. *See* § 208.24(f).

In *Singh v. USCIS*, No. 10 C 8288, 2011 U.S. Dist. LEXIS 42019 (N.D. Ill. Apr. 19, 2011), the court held that USCIS's termination of the plaintiff's asylum status constituted final agency action. Specifically, termination consummated agency decisionmaking when it increased the evidentiary burden on the plaintiff in applying for asylum anew.[10]

The burden-shifting occasioned by termination of asylum, however, does not consummate agency decisionmaking. Evidentiary burdens serve to inform a factfinder's decisions, especially where parties have failed to produce adequate evidence. Although burdens sometimes dictate an agency's eventual decision, that decision is not consummated until it is actually made.

In summary, termination of asylum does not "mark the consummation" of a decisionmaking process. Accordingly, it is not final agency action, so the Qureshis' challenge is premature.[11] The judgment of dismissal is AFFIRMED.

---

[10] *Id.* at *10-11. As explained in part I, an alien in a removal proceeding who makes a new asylum application is entitled to a full evidentiary hearing on the application, 8 U.S.C. § 1229a(b)(4), but he also shoulders the applicant's evidentiary burden anew, *see* § 1158(b)-(1)(B), whereas in termination proceedings USCIS has the burden of proof, 8 C.F.R. § 208.24(c), (f).

[11] Because termination of asylum does not satisfy the consummation condition, termination would not be final agency action even if it did satisfy the legal-consequences condition. Accordingly, we decline to address whether burden-shifting or loss of employment authorization is a significant legal consequence. We also decline to address the government's other arguments.